Lorene Weir Craddock WINTER,
Plaintiff,

v.

EON PRODUCTION, LTD., et
al., Defendants.

Civ. A. No. 73–2654.

United States District Court,
E. D. Louisiana.

May 21, 1976.

Carl J. Barbier, New Orleans, La., for plaintiff.

Christopher Tompkins, New Orleans, La., for defendants.

ALVIN B. RUBIN, District Judge:

The issue raised in this case may be stated in this way: Is the negligence of the operator of a vessel imputed to the vessel's owner in the absence of a master-servant relationship between the owner and operator? It arises in the following manner.

On October 7, 1972, a speedboat owned and operated by the defendant and used in the filming of the James Bond movie "Live and Let Die" collided with the cabin cruiser Mosca on navigable waters of the State of Louisiana. The Mosca was owned by Mr. and Mrs. Earl Allen Winter [1] and was being operated by Mr. Winter at the time of the collision. Both Mr. and Mrs. Winter suffered personal injuries in the collision,[2] as did three passengers of the defendant's speedboat.

On September 1, 1973, Mr. Winter died from a heart attack. Shortly thereafter, Mrs. Winter filed this suit claiming damages for the personal injuries she and her husband had suffered and for the damages she and others [3] had suffered by reason of Mr. Winter's death, claiming that the collision had aggravated a pre-existing heart condition and this helped to bring about his death. While the complaint was certainly cognizable within the admiralty jurisdiction, and while it was styled a "SUIT FOR DAMAGES UNDER GENERAL MARITIME LAW", diversity of citizenship and jurisdictional amount were alleged, a jury trial was prayed for, and no Rule 9(h) statement was included in the complaint. Throughout the proceedings all parties assumed that the suit was instituted on the "law side" of the court.

The defendant answered, denying liability to the plaintiff and asserting a counterclaim. The essence of the counter-claim was that the defendant had been sued by the three passengers of the speedboat in state court, and that the plaintiff should be held liable for indemnity or contribution for any amounts the defendant might be forced to pay as a result of that litigation. The state court suit has now been settled; counsel stipulated that the counterclaim is for $8,350.00, and submitted the matter to the court.

The case was then tried by a jury. Upon completion of the trial, the jury returned a special verdict finding the following facts:

1. The accident was caused by the defendants' negligence in part, and this constituted 40% of the fault.

2. The accident was caused by Mr. Winter's negligence in part and this constituted 60% of the fault.

3. There was no causal relationship between the collision and Mr. Winter's death.

4. Mrs. Winter's damages resulting from her own personal injuries amounted to $48,229.50.[4]

Judgment was entered on the verdict in the amount of $14,481.00 by means of the following calculations: First, the plaintiff's award was reduced by the amount of her husband's contributory negligence, to the sum of $19,491.80 or 40% of $48,229.50. Then, the plaintiff's award was further reduced by 60% of the amount of the defendant's counterclaim, or $5,010.00.

The plaintiff then filed this motion to amend the judgment,[5] claiming that her award for damages resulting from her personal injuries should not have been reduced by the percentage of her husband's contributory negligence.

## I. APPLICABLE LAW

A threshold issue is what law applies to determine this issue. The initial response from any student of admiralty jurispru-

---

1. The record contains no evidence concerning whether the Mosca was part of the community of gains existing between Mr. and Mrs. Winter, if such a community existed, or was owned in indivision by the two spouses. For the purpose of determining whether Mrs. Winter is liable as owner for the acts of her husband, it is unnecessary to determine in what capacity Mrs. Winter had an interest in the Mosca.

2. The jury awarded Mrs. Winter $1000 for the personal injuries her husband had suffered. Of course, this amount must be reduced by the amount of his fault, as this was his own cause of action.

3. Mrs. Winter also claimed damages on behalf of Mr. Winter's five children.

4. As pointed out in note 2, *supra,* $1000 of this was for Mr. Winter's own personal injuries.

5. The plaintiff also moved to amend the findings of the court as to the degree of Mr. Winter's fault. This motion was denied.

dence in recent years would be that the general maritime law, as expounded by the federal courts, is the exclusive source of the applicable rules of law. However, the problem requires somewhat more consideration than that.

In *Belden v. Chase,* 1893, 150 U.S. 674, 14 S.Ct. 264, 37 L.Ed. 1218, the United States Supreme Court held that, in a collision case brought in state court under the savings clause, the common law rule of contributory negligence rather than the admiralty rule of divided damages applied:

> The doctrine in admiralty of an equal division of damages in the case of a collision between two vessels when both are in fault contributing to the collision, has long prevailed in England and this country. *The Max Morris,* 137 U.S. 1, 11 S.Ct. 29 [34 L.Ed. 586]. But at common law the general rule is that if both vessels are culpable in respect of faults operating directly and immediately to produce the collision, neither can recover damages for injuries so caused. *Atlee v. Packet Co.,* 21 Wall. 389 [22 L.Ed. 619].

> In order to maintain his action, the plaintiff was obliged to establish the negligence of the defendant, and that such negligence was the sole cause of the injury, or, in other words, he could not recover, though defendant were negligent, if it appeared that his own negligence directly contributed to the result complained of. 150 U.S. at 691, 14 S.Ct. at 269.

Decided in the days before *Erie R. Co. v. Tompkins,* 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, *Belden* certainly meant that the "general common law" applied in a collision case brought in a savings clause forum. Translating this holding into post *Erie* concepts, *Belden v. Chase* stands for the proposition that, when an action involving a maritime collision is commenced in state court

or in federal court under the diversity jurisdiction (governed under *Erie* by the law that would be applied by the state), state law governs the rights and liabilities of the parties.

But many tides have flowed since 1893. In 1917, the Supreme Court decided *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, and established the principle that the general maritime law governs maritime occurrences, and that state law must yield to the required uniformity of the maritime law. This uniformity is mandated whether the suit is brought in the admiralty forum, the "law side" of the federal court, or in the state court. *Pope & Talbot v. Hawn,* 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

■ There are permissible areas of state regulation of maritime affairs. Wide latitude has been given to the states to regulate marine insurance. *Wilburn Boat Co. v. Firemen's Fund Ins. Co.,* 1955, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337; *Irwin v. Eagle Star Ins. Co.,* 5th Cir. 1972, 455 F.2d 827; *Olympic Towing Corp. v. Nebel Towing Co. Inc.,* 5th Cir. 1969, 419 F.2d 230. And the interest of the states in protecting their shores from pollution from the sea permits the states to legislate standards that must be observed by vessels using the waters of the state. *Askew v. American Waterways Operators, Inc.,* 1973, 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280. But it is incongruous with other contemporary concepts to think that the choice of forum should determine the applicable law. Where state regulation is permissible, the state law is applicable in the admiralty forum; *Olympic Towing Corp. v. Nebel Towing Co. Inc., supra;* where there is a federal rule contrary to the state law, state law must yield.[6]

6. Only one case decided in the post-*Jensen* era indicates that different law is to be applied depending upon the forum. In *Caldarola v. Eckert,* 1947, 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968, the Supreme Court, through Mr. Justice Frankfurter, indicated that the state court had correctly applied the state rule as to the duty owed. Insofar as the case can be read to say that the choice of forum determines the choice of law, Professors Gilmore and Black attribute the statements in *Caldarola* to "inadvertence." Gilmore & Black, The Law of Admiralty § 1–19 at 51 (2d ed. 1975). As they point out, Mr. Justice Frankfurter himself clearly repudiated such notions in his concurrence in *Pope & Talbot v. Hawn,* 1953, 346 U.S. 406, 414, 74 S.Ct. 202, 98 L.Ed. 143.

The opinion of the Supreme Court in *Askew,* supra, might indicate some retreat from the *Jensen* principle of required uniformity. There the court said:

> Jensen and Knickerbocker Ice [*Knickerbocker Ice Co. v. Stewart,* 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834] have been confined to their facts, *viz.,* to suits relating to the relationship of vessels, plying the high seas and our navigable waters, and to their crews.

411 U.S. at 344, 93 S.Ct. at 1601. Even a literal reading of this language, however, would indicate the vitality of the uniformity principle, for what this case involves is "the relationship of vessels . . .."

▮ *Belden v. Chase* was decided in another century. That decision has become flotsam in the waters of post-*Jensen* jurisprudence; it is inconceivable that Supreme Court would not today say that the maritime law governs the rights and liabilities of parties to collision litigation. Accordingly, the maritime law will be applied to determine the liability of Mrs. Winter for the negligence of her husband.

## II. APPLICABLE PRINCIPLES

Whether the owner of a vessel is personally liable for the negligence of an operator who is not the owner's servant is not a question of common recurrence in the jurisprudence; in the normal course of affairs the vessel is operated by servants of the owner. But the court is not entirely without beacons; vessels are demised and operated by the demisee's servants; vessels take on pilots under compulsion of law; and vessels are often towed by independent towing companies. In all these cases, those in control of the vessel are not the owner's employees; in none of them is the owner visited with personal liability for the tortious acts of those operating the vessel.

In *Sturgis v. Boyer,* 1860, 65 U.S. (24 How.) 110, 16 L.Ed. 591 the defendant's vessel while under tow collided with the plaintiff's vessel. A libel in rem was filed against the defendant's vessel. The Supreme Court affirmed a judgment for the defendant.

Vessels engaged in commerce are held liable for damage occasioned by collision, on account of the complicity, direct or indirect, of their owners, of the negligence, want of care, or skill, on the part of those employed in their navigation. Owners appoint the master and employ the crew, and consequently are held responsible for their conduct in the management of the vessel. Whenever, therefore, a culpable fault is committed, whereby a collision ensues, that fault is imputed to the owners, and the vessel is just as much liable for the consequences as if it had been committed by the owner himself. *No such consequences follow, however, when the person committing the fault does not, in fact, or by implication of law, stand in the relation of agent to the owners. Unless the owner and the person or persons in charge of the vessel in some way sustain toward each other the relation of principal and agent, the injured party* cannot have his remedy against the colliding vessel. (Emphasis supplied) 5 U.S. (24 How.) at 123, 16 L.Ed. 591.

Since a collision creates a lien on the offending vessel, it is obvious that the lack of in rem liability in *Sturgis* would indicate a correlative lack of in personam liability.

The rule of *Sturgis v. Boyer* has been consistently followed. *The Galatea,* 1875, 92 U.S. (2 Otto) 439, 23 L.Ed. 727; *The Clarita and The Clara,* 1874, 90 U.S. (23 Wall.) 1, 23 L.Ed. 146. See also *Boston Metals Co. v. S/S Winding Gulf,* 1955, 349 U.S. 122, 75 S.Ct. 649, 99 L.Ed. 933.

In *The China,* 1868, 74 U.S. (7 Wall.) 53, 19 L.Ed. 67, the Supreme Court held that a vessel operated by a compulsory pilot was liable in rem for the negligent acts of the pilot. In *H. Ramsdell Transportation Co. v. La Compagnie Generale Transatlantique,* 1901, 182 U.S. 406, 21 S.Ct. 831, 45 L.Ed. 1155, however, the Court held that the owner was not liable in personam when the vessel was operated by a compulsory pilot; the rule of *The China* was explained in terms of the nature of the in rem proceeding. While *Ramsdell* was brought on the

"law side" of the court; the reasoning of the Court is equally applicable to in personam actions in admiralty. See Gilmore & Black, The Law of Admiralty § 9–9 at 599 n.25 (2d ed. 1975) and authorities cited herein. It has never been seriously suggested that the owner of a vessel operated by a demisee is personally liable for the negligent acts of the demisee or his servants. See *The Barnstable,* 1901, 181 U.S. 464, 21 S.Ct. 684, 45 L.Ed. 954; *The China,* 1868, supra, 74 U.S. at 70, 19 L.Ed. 67 (Clifford, J., concurring.)

The Limitation Act, 46 U.S.C. § 183, does not alter these principles. It was passed in 1851, well before the decision of the pertinent cases. The doctrine of limitation, which existed under the general maritime law, was rejected by the American admiralty, *The Rebecca,* D.Me.1831, 20 Fed.Cas. 373, Case No. 11,619, and had to be adopted by legislation. Its purpose was to soften the harshness of the doctrine of respondeat superior; the owner of the ship has no real control over his servants when the ship is at sea. Gilmore & Black, The Law of Admiralty § 10–20 at 877 (2d ed. 1975). But in the absence of a respondeat superior relationship, there is no liability, and no necessity to consider the doctrine.

■ Applying these principles to the case at bar, it is improper to impute the negligence of Mr. Winter to Mrs. Winter with respect to her individual claim simply because she was the half-owner of the vessel. Mr. Winter was not acting as Mrs. Winter's servant in the operation of the Mosca; there is no evidence that he was subject to her control and supervision. The marital relationship does not of itself permit imputation of negligence to the non-negligent spouse who is injured by the concurrent negligence of a negligent spouse and a negligent third person. *Vitale v. Checker Cab Co.,* La.1928, 166 La. 527, 117 So. 579 (citing common law authorities). It is not even argued that Mrs. Winter was herself negligent. Accordingly, the negligence of Mr. Winter does not operate, in and of itself, to reduce Mrs. Winter's claims for her own personal injuries.

■ But it would be unjust if Mrs. Winter is allowed to recover *all* of the damages she suffered from a defendant whose fault was only 40% responsible for her injuries. The maritime law recognizes that it is inequitable to require one tortfeasor to shoulder the entire burden of injuries caused by more than one person; the Supreme Court's decision in *Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc.,* 1974, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694, which allowed contribution in maritime cases, is a recognition of this inequity. In computing the amount of contribution due, apportionment is made according to degree of fault. *United States v. Reliable Transfer Co., Inc.,* 1975, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251; *Complaint of S/S Helena,* 547 F.2d 255, 5th Cir., 1976.

Furthermore, Mrs. Winter brought this suit not only in her individual capacity to recover for her own personal injuries, but in her capacity as representative of her husband's succession. Presumably she has shared to some extent in her husband's succession. The injustice is thereby increased; not only is the defendant forced to pay for damages it only partially caused, but to pay these damages to a person who represents the other tortfeasor.

While at one time it might have been said that "Death is a composer of strife by the general law of the sea . . .", *Cortes v. Baltimore Insular Line,* 1932, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368, it would be inconsistent with the pronouncement of the Supreme Court in *Moragne v. States Marine Lines, Inc.,* 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, not to allow the defendant to pursue a claim for contribution against the estate of Mr. Winter. See *Cox v. Roth,* 1955, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260.

■ Accordingly, the judgment shall be amended to allow Mrs. Winter the full amount of her damages. The defendant is hereby granted leave to amend the counterclaim to state a claim for contribution

against the estate of Mr. Winter for the amount of the award to Mrs. Winter.[7]

---

**7.** Although under Louisiana law Mrs. Winter could not have sued her husband as a joint tortfeasor, La.R.S. 9:291, the defense of inter-spousal immunity is strictly personal and does not bar a claim for contribution against a spouse whose fault has contributed to the injury. *Smith v. Southern Farm Bureau Cas. Co.,* 1965, 247 La. 695, 174 So.2d 122. Thus, we need not consider whether this State-created defense would be applicable in a maritime collision case. See discussion, *supra*; *Hamilton v. Canal Barge Co.,* E.D.La.1975, 395 F.Supp. 978, 988.