Larry A. **PIZANI**, d/b/a **Lafitte Gift Shop**, Plaintiff-Appellee,

v.

**M/V COTTON BLOSSOM**, her engine, tackle, apparel, etc., in rem, Defendant,

**New Orleans Steamboat Company**, in personam, Defendant-Appellant.

No. 81–3205
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 12, 1982.

Harvey G. Gleason, New Orleans, La., for defendant-appellant.

Robert G. Creely, Jacob J. Amato, Jr., Gretna, La., for plaintiff-appellee.

Before RUBIN, SAM D. JOHNSON, and GARWOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The owner of a dock seeks to recover for damages occasioned it by the repeated collisions of an excursion vessel. The district court found that three specific collisions occurred, that the suit was not barred by laches, and awarded damages. The vessel owner appeals, arguing, *inter alia*, that the judgment should be reversed and the suit dismissed because the plaintiff failed legally to prove the amount of damages caused by the collisions. We agree that the plaintiff's proof on the amount of damages was legally insufficient to support the district court's award and, therefore, vacate the award of damages in favor of the dockowner. Instead of directing that the suit be dismissed, however, we remand the cause to the district court so that the plaintiff may have an opportunity properly to prove the amount of damages suffered.

Larry A. Pizani, the plaintiff, owned a gift shop and the dock situated alongside it on the Gulf Intracoastal Waterway. In 1975 the plaintiff's wife requested that the defendant, the New Orleans Steamboat Company, stop its excursion vessel, the M/V COTTON BLOSSOM, at Pizani's gift shop to allow the passengers to shop for food and gifts. Although no consideration was offered in return, the steamboat company eventually agreed to allow its captains to stop at the gift shop at their option. Between June 1976 and July 1978 the captains who navigated the COTTON BLOSSOM regularly did so.

In late 1977 the COTTON BLOSSOM experienced a period of engine difficulties. The district court found that, as a result of these, it collided with Pizani's dock on three separate occasions while engaged in landing there. Pizani did not, however, at any time notify the defendant that he intended to hold it liable for these damages.

By the spring of 1978, the steamboat company had begun to reconsider its decision allowing its captains to stop at Pizani's gift shop, primarily because the company was losing sales to Pizani that otherwise would be made on board. After Pizani refused to share any of his revenue, the steamboat company ordered its captains not to stop at the gift shop. The last visit occurred on July 11, 1978.

Two days later, Pizani sent a mailgram to the defendant advising it that he intended to hold it liable for the damages caused by the 1977 collisions. Suit was not, however, filed until May 1979.

The evidence adduced at trial supports the district court's finding, noted above, that the COTTON BLOSSOM collided with Pizani's dock three times in late 1977. The defendant concedes as much on appeal. The first of the collisions occurred at the corner formed by the bayou-side of the dock and the side of the slip, point A on the diagram below. The other two collisions were at nearby spots at the head of the slip, point B.

Pizani's proof of the amount of damages was based solely on a report prepared by a maritime construction firm, Lane & Company. Lane proposed a number of specific repairs to Pizani's dock, and made a lump-sum bid of $42,296 to effect them all. Most importantly for our purposes, the Lane report called for the replacement of all five of the pile clusters at Pizani's dock, numbered "1" through "5" in the diagram below, with new clusters, each to be composed of five pilings, even though all but one of those existing were made up of only three or four. The district court ultimately awarded Pizani the entire $42,296 bid by Lane.

Pizani's Dock

The steamboat company argues here that the only pile clusters that the COTTON BLOSSOM could possibly have damaged, given the district court's findings as to the number and location of the collisions, are numbers "4" and "5," located on either side of the site of one of the collisions (point A in the diagram). In any event, continues the defendant, the replacement of three- and four-pile clusters with five-pile ones would clearly constitute improvements to plaintiff's facility, vis-a-vis its pretort condition, and be, as such, noncompensable in a tort action. And, finally, because Lane's report included only a lump-sum bid, thus rendering it impossible to isolate the cost of the damages that actually were caused by the COTTON BLOSSOM, the argument concludes,[1] the award of damages by the district court in favor of Pizani should not only be reversed, but the suit dismissed as well.

This case thus presents two basic questions: (1) Was the district court's award of $42,296, based as it was upon the Lane bid, legally erroneous? (2) If so, should Pizani's suit be ordered dismissed, or merely remanded so that a proper determination of the amount of damages might be made?

In answer to the first question, we think it beyond doubt that the district court held the defendant liable for more than

---

1. The defendant also continues to assert on appeal that Pizani's suit is barred by laches. Since the analogous state statute of limitations had run when suit was filed, Pizani had the burden of proof to show either that his delay was excusable or that the defendant was not unduly prejudiced thereby. *Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir. 1980). The trial court enjoys a wide area of discretion in ruling on the defense of laches, *Kelly v. Smith*, 485 F.2d 520, 526 (5th Cir. 1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974), and its decision on such a defense will not be reversed absent an abuse of that discretion. Here, the trial court ruled that there had been no prejudice to the defendant both because it had actual notice of the plaintiff's claim within approximately six months of the collisions (the July 13, 1978,

mailgram) and constructive notice at the time of the collisions because the captains of the COTTON BLOSSOM, the defendant's agents, were aware of the collisions as they occurred (or so two out of three admitted at trial). Without ruling on the district court's theory of constructive notice, we find that the actual notice alone was sufficient to negate the possibility of prejudice to the defendant. The plaintiff cannot be held responsible for the defendant's failure to conduct a survey of the damage until suit had actually been filed, approximately nine months after receipt of the mailgram. The district court's finding that defendant was not unduly prejudiced *by plaintiff's delay*, therefore, was not clearly erroneous, and thus its decision against defendant's claim of laches was not an abuse of its discretion.

could properly have been awarded Pizani in this action.[2] We start, of course, from the elementary proposition that the proper measure of damages in a tort action is compensation. "The purpose of compensatory damages ... is to place the injured person as nearly as possible in the condition he would have occupied if the wrong had not occurred." *Freeport Sulphur Co. v. S/S Hermosa*, 526 F.2d 300, 304 (5th Cir. 1976). *See also* Restatement (Second) of Torts § 903 comment a (1977).[3] As corollaries to this general rule, a defendant cannot be held liable for damages that he has not been shown to have caused, *see, e.g., Winter v. Eon Production, Ltd.*, 433 F.Supp. 742, 746 (E.D.La.1976), or for the cost of repairs that enhance the value of the damaged property compared with its pretort condition, *see, e.g., Freeport Sulphur Co. v. S/S Hermosa, supra*, 526 F.2d at 304, 307; *see also* Restatement (Second) of Torts § 928(a) comment a (1977).

█ The defendant has demonstrated that the district court's award based on the Lane bid erroneously allowed the plaintiff "compensation" both for repairs that would enhance the value of his facility vis-a-vis its pretort condition and for repairs of damage (implicitly) not found by the district court to have been caused by the COTTON BLOSSOM at all, the repair of pile clusters numbers "1" through "3." We, therefore, agree with the vessel owner that the district court's award cannot stand.

The main problem in this case, however, arises not from the fact that the district court's award was erroneous, but from the fact that the sole basis of Pizani's proof of the amount of damages, the single lump-sum bid by Lane, afforded no means whereby the district court *could* have properly determined the actual amount of damages caused by the defendant. Needless to say,

we are similarly handicapped. The issue thus becomes the proper disposition of this suit under these circumstances. The defendant argues, of course, that the suit should be ordered dismissed; the plaintiff, on the other hand, would presumably have argued (if he had even considered the possibility that the district court's award might be held erroneous) that only a remand is required.

Instead, Pizani relied for affirmance on the district court's erroneous holding that, even though "the evidence suggested that the repairs to be rendered by Lane ... may have included clusters with additional piles, *defendant* has failed to establish the differential in cost if that be the case ..." (emphasis added). According to the district court, this "failure" on the part of defendant somehow transformed what would clearly be improvements into mere repairs.

█ The plaintiff bears the burden of proof to show the amount, as well as the fact, of damages. *E.g., Boudoin v. J. Ray McDermott & Co.*, 281 F.2d 81, 87 (5th Cir. 1960). We know of no rule shifting this burden to the defendant every time a plaintiff succeeds in introducing into evidence some figure denominated "the cost of repairs." Indeed, it has explicitly been held that when a defendant shows that the figure claimed by the plaintiff includes noncompensable improvements, the *plaintiff* must prove the amount of such improvements, *i.e.*, the amount by which the original figure must be decreased. *See O'Brien Bros. v. The Helen B. Moran*, 160 F.2d 502, 505 (2d Cir. 1947).

█ Application of the common-law rule in this situation, sometimes known as the "rule of the floating subtrahend," would require the outright dismissal of Pizani's suit. Succinctly stated,

---

**2.** We note that when a "cause of action arises under the maritime law, the damages issues are decided under federal rather than state law." *Freeport Sulphur Co. v. S/S Hermosa*, 526 F.2d 300, 302 n.2 (5th Cir. 1976).

**3.** When "there is a tortious injury to property and the market value of that property is un-

known, the amount of damages must be determined by the cost of repairs...." *Freeport Sulphur Co. v. S/S Hermosa, supra*, 526 F.2d at 304. Therefore, Pizani's attempt to prove his damages by showing what the cost of repairs would be was not in itself error.

This [rule] comes in where a plaintiff has shown the gross amount of expense or loss, but where defendant is not liable (by substantive law) for all of the loss, or where it appears that certain credits or deductions should be made against the total expense. In such cases some courts are strict in requiring plaintiff to prove affirmatively the amount that should be subtracted, before he can recover anything on account of the loss or expense in question.

2 F. Harper & F. James, *The Law of Torts* § 25.3, at 1305 (1956) (emphasis deleted). Thus, when a negligent pedestrian was run down by a trolley and then further injured by the motorman's negligence in backing the car over him again, the pedestrian was denied all recovery for his failure to show how much of his total injury resulted from the second impact for which alone defendant was liable. *Deutsch v. Connecticut Co.*, 98 Conn. 482, 490, 119 A. 891 (1923). *Accord, Konchesky v. S. J. Groves & Sons Co.*, 148 W.Va. 411, 135 S.E.2d 299 (1964). Apparently this rule is predicated on the reasoning that, inasmuch as both the fact and amount of damages are essential elements of a tort action on which the plaintiff bears the burden of proof, and the introduction only of "lump-sum" evidence is insufficient as a matter of law to prove the amount (if not the fact) of damages, the plaintiff's suit should be dismissed for failure of proof of an essential element of the cause of action.

Pizani, however, did not bring his claim under the common law. Rather, his claim was rightfully brought within the admiralty and maritime jurisdiction of the federal courts. And, as Justice Story explained nearly a century-and-a-half ago:

> A court of admiralty is, as to all matters falling within its jurisdiction, a court of equity. Its hands are not tied up by the rigid and technical rules of the common law, but it administers justice upon the large and liberal principles of courts which exercise a general equity jurisdiction.

*The David Pratt,* 7 Fed.Cas. 22, 24 (D.C.Me. 1839) (No. 3597), *quoted in Cates v. United States,* 451 F.2d 411, 414 (5th Cir. 1971).[4] We find that, under the circumstances here presented, good conscience impels us to remand this case to the district court for a proper determination of the amount of damages, rather than dismiss it.

First of all, there has not been such a total failure of proof on the part of Pizani that he has shown *no* damages; on the contrary, he has conclusively shown that he has suffered not insubstantial damage at the hands of the defendant. Of course, this would be the case whenever the common-law "rule of the floating subtrahend" could be applied.

We also detect, however, no evidence of a conscious intention on Pizani's part to collect more damages from the defendant than he knew he was legally entitled to. For example, the evidence regarding damage to pile clusters numbers "1" through "3," which the court below implicitly found was not caused by collisions with the COTTON BLOSSOM, was obviously introduced under the mistaken assumption that such a causal connection would be proved.[5] More gener-

---

**4.** See *also* the memorable words of Chief Judge Brown: "The Chancellor is no longer fixed to the woolsack. He may stride the quarter-deck of maritime jurisprudence and, in the role of admiralty judge, dispense, as would his landlocked brother, that which equity and good conscience impels." *Compania Anonima Venezolana de Navegacion v. A. J. Perez Export Co.*, 303 F.2d 692, 699 (5th Cir.), *cert. denied*, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276 (1962).

**5.** Pizani put on one witness at trial who testified that the first time the COTTON BLOSSOM visited the dock, it attempted to land on the bayou-side of the wharf, attached lines to at least some of the pile clusters there (numbers "1" through "4"), and, in attempting to pull itself toward shore, damaged those clusters. This same witness, however, also testified that, after this first and only attempted docking by the COTTON BLOSSOM along that part of the dock, many other vessels did tie up there. In addition, several other witnesses testified that the COTTON BLOSSOM could never have tied up on that side of the dock because the water there was simply too shallow to accommodate it. In short, we agree with the district court that the only damage-producing incidents involving the COTTON BLOSSOM were the three collisions already alluded to. Upon remand, therefore, proof of damages will be strictly lim-

ally, Pizani also seems to have believed that once his evidence of the "lump-sum" bid was introduced, the burden shifted to the defendant to prove the amounts that, for various reasons, should be subtracted therefrom. This belief was, as we have pointed out, erroneous, but we think it would be inequitable to penalize the plaintiff for a mistake made equally by the district court. We, therefore, remand this case to the district court so that the plaintiff may have the opportunity properly to prove the amount of his damages.[6] *See O'Brien Bros. v. The Heleh B. Moran, supra,* 160 F.2d at 507 (case remanded for same purpose).

▄ Before concluding, we consider one final argument. The defendant asserts that proper *in rem* admiralty procedure was not followed and that, therefore, the *in rem* judgment against the COTTON BLOSSOM should be reversed. We agree. Supplementary Rule C(2) of the Federal Rules of Civil Procedure, Fed.R.Civ.P.Supp. C(2), requires the filing of a verified complaint as a prerequisite to obtaining *in rem* jurisdiction. Pizani's complaint was not verified. In addition, service upon the COTTON BLOSSOM as required by Supplementary Rule C(3), Fed.R.Civ.P.Supp. C(3), was not perfected; the service instructions on the complaint did not request that *in rem* proc-

ess issue. Because the COTTON BLOSSOM did not make a general appearance below, thereby waiving these jurisdictional defects, the district court should not have awarded *in rem* judgment against the COTTON BLOSSOM.

In sum, the *in personam* judgment against the New Orleans Steamboat Company on the issue of liability is AFFIRMED. The award of damages is VACATED, and the cause is REMANDED for further proceedings to determine the amount of damages caused by the three collisions found by the district court to have occurred. The judgment *in rem* against the M/V COTTON BLOSSOM is REVERSED. Upon remand, however, the plaintiff may pursue such further proceedings *in rem*, if any, as may be appropriate.

▄▄▄▄▄

---

ited to damages specifically caused by those collisions. *See also* note 6 *infra.*

**6.** While we have to this point discussed only the two most clear-cut ways in which the district court's award excessively compensated plaintiff, the defendant suggests several others in which this may have been the case as well. For example, the Lane report specified that *all* pilings, whether fender or cluster, were to be replaced with 50-foot pilings, even though the plaintiff himself admitted at trial that, "on the outside we have fifty foot lengths and as it came in on the slip, we had shorter pilings." On remand, the district court is instructed to make as specific as possible findings of the actual damages caused by the COTTON BLOSSOM.

Finally, defendant has argued that Pizani's dock, in certain particulars damaged by the COTTON BLOSSOM, was constructed at variance with the U.S. Army Corps of Engineers permit authorizing it, and, to the extent that this is so, Pizani's award should be reduced. Assuming that Pizani's dock was constructed in violation of his permit, we know of only one

rule on the subject, and it, by implication, refutes defendant's argument. Under the so-called Pennsylvania Rule, based on *The Pennsylvania,* 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874), when a vessel collides with a structure built or maintained in violation of certain applicable navigation statutes, the owner of the violating structure must prove that the *violation* could not have caused or contributed to the cause of the collision to recover full damages. By necessary implication, of course, if such can be proved, the owner *may* recover his damages in spite of the fact that his structure is indeed in violation. Therefore, since it in no way appears that Pizani's violations, if any, could have caused the collisions, his recovery may not be limited to the cost of repairing his structure only to the extent authorized in the original permit. We see no reason, however, why the defendant may not introduce the permit as at least probative on the question of what in fact existed at plaintiff's facility at the time of the collisions, *e.g.,* the length of the pilings.