**Larry A. PIZANI, d/b/a Lafitte Gift Shop, Plaintiff-Appellee,**

**v.**

**M/V COTTON BLOSSOM, etc. and New Orleans Steamboat Company, Defendant-Appellant.**

No. 82–3662

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 6, 1984.

---

Chaffe, McCall, Phillips, Toler & Sarpy, Harvey G. Gleason, New Orleans, La., for defendant-appellant.

Amato & Creely, Jacob J. Amato, Jr., Gretna, La., for plaintiff-appellee.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This is the second appeal arising out of three collisions in late 1977 by the excursion boat COTTON BLOSSOM with a dock on the Gulf Intracoastal Waterway. Larry Pizani, owner of the dock, filed this suit to recover for those damages to the dock. In our first review of this case, we upheld the trial court's finding of liability, but held that Pizani's proof as to the amount of damages was legally insufficient to support the district court's award. Accordingly, we remanded the case for further proceedings to determine the proper amount of damages. *Pizani v. M/V COTTON BLOSSOM*, 669 F.2d 1084 (5th Cir.1982). On remand, the district court heard expert testimony as to the cost of repairing only those portions of the dock actually damaged by the COTTON BLOSSOM. It accepted as more credible the testimony of Pizani's expert and held that the cost of repair would be $30,073. The court depreciated that amount by $\frac{3}{15}$th—ostensibly the age of the dock at the time of the accidents divided by the dock's projected life span prior to the accident—and, awarded Pizani damages of $24,058.40 plus post-judgment interest. We affirm.

The facts of the case are set forth at length in our earlier opinion. 669 F.2d at 1086. To summarize, however, Pizani and his wife owned and operated a gift shop along the Gulf Intracoastal Waterway. Between June 1976 and July 1978, the COTTON BLOSSOM, an excursion boat owned by New Orleans Steamboat Company, regularly stopped at the gift shop.

On three occasions in late 1977, the COTTON BLOSSOM experienced engine difficulties as it was coming into the dock and collided with—or bumped severely—Pizani's dock. Pizani did not notify New Orleans Steamboat that he intended to hold the company liable for damages to the dock until July, 1978, almost immediately after the company had ordered its captains no

longer to stop at the gift shop. Suit was filed in May 1979. The trial court held the COTTON BLOSSOM and New Orleans Steamboat liable and awarded damages of $42,296.

On appeal, this court upheld the district court's conclusion that the COTTON BLOSSOM had thrice collided with Pizani's dock and was liable for the resultant damage.[1] We vacated the award of damages, however, and remanded the cause for further proceedings, because the district court's judgment erroneously "compensated" Pizani both for repairs which increased the value of the dock in relation to its pretort condition and for repairs to areas of the dock not actually damaged by the COTTON BLOSSOM.

On remand, the trial court heard testimony from experts Milton Gagnon, of Bayou Land & Marine Contractors, and Joseph Davis, of Professional Construction Services. Gagnon estimated the total cost of repairs to be $30,073. Davis prepared three separate estimates, contemplating the use of 25 foot, 30 foot and 50 foot cluster pilings, under which the total cost of repairing the dock was set at $7,140, $7,740, and $9,140 respectively. The trial court concluded that Gagnon's higher bid was more credible and accepted it as accurately reflecting the cost of repairs.[2]

▇ New Orleans Steamboat asks us to reverse that credibility finding as clearly erroneous. We decline to do so. The record shows that Davis' company, Professional Construction Services, was admittedly less experienced than Bayou Land & Marine Contractors at this particular type of construction. Moreover, Davis' estimate did not include certain repairs to the walkway, railing, and bulkhead contemplated by Gagnon's. In light of those factors, we have no hesitancy in saying that the findings that Gagnon's estimate of the cost of repairs was more credible and more accurately reflected the true amount of damages sustained by Pizani were well above the Plimsoll line of clearly erroneous. We find no error in the district court's acceptance of $30,073 as the cost of repairs.

## Depreciation

New Orleans Steamboat also contends that the District Court erroneously calculated the amount by which the award for repairs should be decreased to account for the depreciation of the dock at the time it was damaged. In orally explaining his findings, the judge declared:

> the useful life of the wharf as testified to by Mr. Bernard would have been 15 years. The wharf was three years old at the time of the damage and that is one-fifth or 20% which would amount to $6,014.60 and that subtracted from the total $30,073 gives a figure of $24,058.40. The plaintiff will have judgment against the defendant in that amount with ... interest from date of judgment at the legal rate.

New Orleans Steamship contends that the trial court was clearly erroneous on two counts: (1) the original useful life of the dock was not 15 years, and (2) the wharf was less than three years old at the time of the accident.

---

1. A sketch of Pizani's dock is published in our earlier opinion, 669 F.2d at 1087. The first of the three collisions occurred at point "A" on the diagram and apparently damaged piling clusters number 4 and number 5 as well as the adjacent walkway and railing. The other two collisions occurred at nearby spots at point "B" on the diagram. The original damages award contemplated not only repairs to these areas but also the replacement of pile clusters 1, 2 and 3, which could not have been damaged by the COTTON BLOSSOM. It also contemplated the replacement of 3- and 4-pile clusters with 5-pile clusters.

2. From the bench, the Trial Judge declared:
   From the evidence presented the court concludes that the more credible bid is that of Bayou Land & Marine Contractors which they submitted specific proposals and that the plaintiff is entitled to recover under it for the one 5-pile cluster and one 3-pile cluster in accordance with the proposal submitted by Bayou Land & Marine Contractors as testified to by Mr. Milton Gagnon, as well as the balance of the repairs to the wharf as submitted in the price by Mr. Gagnon.

■ We hold that there was no error in the finding of a 15 year original useful life. Mr. Gagnon, whose testimony was expressly credited by the Court, testified that the dock as originally constructed has an estimated useful life of 15 to 20 years. Mr. Bernard, New Orleans Steamboat's expert, also testified that a dock of this type had an expected useful life of about 15 years. Bernard qualified this estimate by adding that if there were flaws in the original construction, such as a lack of creosote treating, the useful life would be less. After viewing the dock after the accident, he stated he saw little evidence that creosote had been used. However, the District Court was not compelled to find that creosote had not been used, because the actual builder of the dock testified that creosote was used.

Bernard also complained that some used materials appeared to have been used in the original construction. However, Gagnon, when cross-examined on whether his estimate of the original useful life was based on using new materials, testified that, in his twenty-five years of experience in building and repairing docks, used materials did not affect the useful life. He stated: "New materials—my experience has been a dock will get knocked down before the material deteriorates." Thus, the District Court did not err in accepting the 15 year estimate by both Gagnon and Bernard, while obliquely rejecting Bernard's reservations about original construction flaws.[3]

■ We agree with New Orleans Steamship that there was clear error in the finding that the dock was 3 years old rather than 1½ when it was damaged.[4] However, this change could only harm New Orleans Steamship, and help Pizani, who has not cross-appealed. If the dock was not as old when damaged, then more of its 15 year useful life was remaining at that time. Thus, the depreciation is diminished, and the net recovery is correspondingly increased. Thus, appellant would not be aided by a recalculation.

■ New Orleans Steamship also contends that the District Court should have reduced the recovery to account for the use of 50 foot pilings in Gagnon's estimate, which it claims constitutes a betterment. An increase in value effected by the repair or replacement of a damaged item is properly deducted from the plaintiff's recovery for the cost of repairs. *Hermosa,* 526 F.2d 300, at 304. However, whether this was a betterment depends on whether the pilings originally were appreciably less than 50 feet long. At the original trial, Pizani testified concerning the original dock that "on the outside we have 50 foot lengths and as it came in on the slip, we had shorter pilings." This is consistent with the use of 50 foot pilings to replace the 5 and 3 pile clusters "on the outside." The only other pilings to be replaced are 8 pilings along the slip. New Orleans Steamship relies on the deposition testimony of Danos to show that these pilings were no more than 40 feet.

■ Assuming there was a 10 foot discrepancy in the length of half of the pilings to be replaced, the breakdown of Gagnon's estimate shows that the additional expense of installing eight 50 foot pilings in the slip is more than offset by the increase in recovery that would result from recalculation of the depreciation on the dock based on an elapsed life of one and one half years rath-

---

**3.** Assuming that used materials had been originally used—and there was some conflict in testimony on this—Gagnon testified that use of used materials in rebuilding the dock, if they could be obtained, would not have lowered his bid appreciably—under $1,000 out of $30,000. This roughly 3% decrease, if it could be achieved, would be more than offset by the decrease in depreciation deduction which we find *infra* would result from a recalculation of the District Court's figure based on the actual one and one-half year age of the dock when hit, rather than the three year figure that the District Court used. See discussion *infra.*

**4.** The three collisions occurred in 1977. *Pizani v. COTTON BLOSSOM,* 669 F.2d at 1086. The parties agree that the dock was constructed after April 1976, when the Army Corps of Engineers permit was issued. Thus, the dock could not have been more than one and one-half years old when damaged.

er than three years.[5] Thus, the appellant has nothing to gain by recalculation in this Court, or on remand.

"The Chancellor ... may stride the quarterdeck of maritime jurisprudence and, in the role of admiralty judge, dispense ... that which equity and good conscience impells." *Compania Anonima Venezolana De Navigacion v. A.J. Perez Export Co.*, 303 F.2d 692, 699 (5th Cir.1962) (quoted in *Fernales Shipping Co. v. Bonaire Petroleum Corp.*, 733 F.2d 381 (5th Cir., 1984). In this little admiralty case, justice would not be served by remanding for a third trial on the flotsam and jetsam raised as to the depreciation findings. The result of correcting errors, which probably wash in both directions, would certainly be unfavorable to the only party that is dissatisfied with the judgment. Thus, we choose to end the voyage here.

AFFIRMED.

---

5. If the elapsed life of the dock in the District Court's calculation is corrected to one and one-half years rather than three years, the depreciation deduction would not be $6,014.60, but $3,007.30. Pizani would benefit by $3,007.30.

Any reduction achieved by subtracting the additional costs in Gagnon's estimate attributable to the last 10 feet of eight of the pilings would be much less than $3,007.30. Under the analysis of Gagnon's estimate stated in the defendant's own brief, the total cost attributable to the pilings is $15 per foot, per piling. This figure, times 8 pilings, times 10 feet, equals $1200. Defendant's gain on the District Court's error as to the age of the dock when hit ($3,007.30) far overshadows the losses that defendant would suffer from the errors he alleges were made as to the length of the pilings (at most $1,200) and the use of new materials as a betterment (less than $1,000).