NEW YORK STATE ENERGY RE-SEARCH AND DEVELOPMENT AUTHORITY, Plaintiff,

v.

NUCLEAR FUEL SERVICES, INC., Getty Oil Company, Commonwealth Edison Company, General Public Utilities Corp., General Public Utilities Service Corporation, Jersey Central Power & Light Co. and Wisconsin Electric Power Company, Defendants.

No. Civ–82–426.

United States District Court, W.D. New York.

Oct. 7, 1983.

Philip H. Gitlen, Albany, N.Y., for plaintiff.

Martin Siegel, New York City, Jack McKay, Alan C. Brown, Washington, D.C., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This is a case involving the current storage of spent nuclear fuel by the above named defendants and others at plaintiff ("NYSERDA")'s Nuclear Fuels Disposal and Reprocessing Center at West Valley, N.Y. ("the Center"). Defendant Nuclear Fuel Services, Inc. ("NFS"), a subsidiary of defendant Getty Oil Company, is a former operator of the Center and is a current owner of spent fuel stored therein. Spent nuclear fuel in storage at the Center is also owned by various utilities, among which are General Public Utilities Service Corporation, Jersey Central Power & Light Company and their parent, General Public Utilities Corp. (collectively referred to hereafter as "the GPU defendants"), Commonwealth Edison Company ("Comm.Ed."), Wisconsin Electric Power Company ("Wisconsin") and Rochester Gas and Electric ("RG & E").

The extensive facts underlying this action are set forth in a previous opinion of this Court, *see N.Y. St. Energy R. & D. Auth. v. Nuclear Fuel Serv.*, 561 F.Supp. 954 (W.D.N.Y.1983), and will not be repeated here except as they may particularly relate to the instant motion. In an Order dated June 29, 1983 (filed June 30, 1983) I declared that the utility defendants in this action (all the above-mentioned entities save RG & E and NFS) are under a duty to remove their spent nuclear fuel from the Center with reasonable dispatch and with specific reference to an alleged particular present schedule of the United States Department of Energy ("the DOE"). The exact schedule for removal of the fuel has not as yet been proposed and a trial on this issue is scheduled, although Wisconsin and Comm. Ed. are to commence removal of their fuel prior to commencement of such trial.

The State of Ohio ("Ohio") has now moved pursuant to Fed.R.Civ.P. 24(a) and 24(b) for leave to intervene as of right or, alternatively, to be granted permissive intervention as a defendant and cross-claimant in this action. Ohio, which was ably represented in this matter by its counsel, has apparently been notified by the United States Nuclear Regulatory Commission ("the NRC") that the latter had received plans from Wisconsin and Comm.Ed. for

the transporting of nuclear fuel through Ohio to respective storage facilities in Wisconsin and Illinois. Ohio seeks intervention in order to be relieved of, pursuant to Fed.R.Civ.P. rule 60(b), the April 8, 1983 and June 30, 1983 Orders rendered by this Court wherein and whereby it was established that the utility defendants are under a duty to remove their spent fuel from the Center within a reasonable amount of time to forestall a declaration of liability for trespass. Ohio seeks to establish that the claimed trespass by these defendants, which has resulted from the unauthorized but continued presence of their spent fuel at the Center, is justified by the common law privilege of public necessity. In addition, and perhaps as the overall thrust of the present motion, Ohio seeks to put in issue the impact upon it and its citizens of the anticipated numerous shipments of spent nuclear fuel through Ohio and through its most densely populated county as an equitable consideration affecting the propriety of injunctive relief to NYSERDA rather than monetary damages as a result of such trespass. The basis for this aspect of Ohio's motion is the perceived lack of emergency capability to respond to the consequences of any accident which might befall the shipment of nuclear fuel.

Ohio also seeks to intervene in order to assert cross-claims against Wisconsin and Comm.Ed., alleging that the transportation of nuclear fuel is a public nuisance in that it constitutes a significant risk to public health and public safety. Ohio asks that this Court forbid the shipments or upgrade the terms pursuant to which such shipments would be made so as to protect the citizens of Ohio. Lastly, Ohio seeks a determination that the utility defendants are liable for the costs to be incurred by Ohio in order to assure the safety of its citizens.

NYSERDA and NFS oppose any efforts by Ohio to intervene, arguing essentially that Ohio's stated concerns fall outside the scope of this lawsuit. Comm. Ed., Wisconsin and the GPU defendants, contrastingly, favor Ohio's intervention (even though Ohio seeks thereby to assert cross-claims against Wisconsin and Comm. Ed.) but op-

pose granting Ohio its request for more stringent controls on transportation of the spent fuel.

■ Fed.R.Civ.P. rule 24(a)(2), which governs Ohio's request to intervene "as of right," provides that "[u]pon timely application anyone shall be permitted to intervene in an action * * * when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Generally, intervention "as of right" under rule 24(a)(2) requires a showing (1) of a timely application, (2) of an interest in the subject matter of the action, (3) that disposition of the action may impair or impede the protection of the interest as a practical matter and (4) that the interest is not adequately represented by a party or parties to the action. *United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2d Cir.1978); *Levin v. Mississippi River Corp.,* 47 F.R.D. 294 (S.D.N.Y.1969). Despite the above goals of intervention, however, Ohio concedes that the gravamen of its asserted interest "is in the protection of the citizens from the needless transport of [nuclear] waste if an arrangement for its continued storage [at the Center] can be implemented."

■ Ohio's claims seeking to prohibit the *shipment* of spent nuclear fuel through Ohio or seeking to upgrade the terms pursuant to which such shipments would be made so as to better protect its citizens does not state a protectable interest so as to permit its intervention as of right in this Court. It is clear that rule 24(a)'s requirement that one must have "a significantly protectable interest" (*Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971)) relating to subject property or transaction cannot be taken to mean that one must have "a specific legal or equitable interest in the chose" (*see, Rios v. Enterprise Ass'n Steamfitters Loc.*

*U. # 638 of U.A.,* 520 F.2d 352, 357 (2d Cir.1975)), and that, where "[t]he existence of a case or controversy [has] been established as between [the original litigants], there [is] no need to impose the standing requirement upon the proposed intervenor" (*United States Postal Service v. Brennan, supra,* 579 F.2d at 190). The precise nature of the interest necessary to sustain intervention as of right has been delineated differently by various courts (*see, Rosebud Coal Sales Co. v. Andrus,* 644 F.2d 849, 850 n. 3 (10th Cir.1981)), some courts reading the requirement more restrictively than the interpretation prevailing in this circuit (*e.g., Allard v. Frizzell,* 536 F.2d 1332 (10th Cir.1976); *Solien v. Miscellaneous Drivers & Helpers U., Loc. No. 610,* 440 F.2d 124 (8th Cir.), *cert. denied,* 403 U.S. 905, 91 S.Ct. 2206, 29 L.Ed.2d 680 (1971). Although the propriety of intervention must be tested by practical considerations, "intervention still requires a 'direct substantial legally protective interest in the proceedings'". *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1124 (5th Cir.), *cert. denied sub nom. Trefina A.G. v. United States,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970).

■ Ohio lacks a direct, substantial, legally protectable interest in the subject matter of this litigation so as to permit intervention as of right. *Howse v. S/V "Canada Goose I",* 641 F.2d 317, 320–321 (5th Cir.1981). The interests Ohio seeks to protect are "the protection of its citizens from the needless transport of [nuclear] waste," "assuring the safest possible means of transporting the fuel through Ohio," and "examining· the need for the shipments, the precautions which should be taken, and the time frame needed to accomplish those precautions." Ohio's Motion at 10.

There is little question that the interests which Ohio seeks to protect are not protectable in this forum. As the United States Supreme Court recently noted, the Atomic Energy Commission[1] was given by Congress "exclusive jurisdiction to license the transfer, delivery, receipt, acquisition, possession and use of nuclear materials. 42 U.S.C. §§ 2014, (e), (z), (aa), 2061–2064, 2071–2078, 2091–99, 2111–14 (1976 and Supp. IV 1980)." *Pac. Gas & Elec. v. St. Energy Resources Conserv.,* 461 U.S. 190, 103 S.Ct. 1713, 1724, 75 L.Ed.2d 752 (1983). The Court also noted that " '[t]he Commission's prime area of concern in the licensing context, . . . is national security, public health, and safety.' " *Ibid.* (quoting from *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 550, 98 S.Ct. 1197, 1215, 55 L.Ed.2d 460 (1978)).

As the United States Court of Appeals for the Second Circuit has noted, the Hazardous Materials Transportation Act ("HMTA"), 49 U.S.C. §§ 1801–1812 established that the United States Department of Transportation ("the DOT") is the single federal authority with the responsibility for overseeing transportation of hazardous materials, that there is not any requirement that safety in such transportation be maximized and that even state action which increases such safety is precluded. *City of New York v. The State of New York, et al.,* 715 F.2d 732 at 740, 741, 742 (1983). Accordingly, Ohio's interests in prohibiting the transportation through Ohio of spent nuclear fuel, in imposing additional restrictions upon such transportation or upgrading the terms pursuant to which such shipments would be made in order to safeguard the health, safety and welfare of its residents or in challenging the planned transportation routes for the spent fuel are simply beyond the scope of this lawsuit and the expertise of this Court and must be addressed to the NRC and the DOT rather than being raised here. As to these aspects Ohio has no interest which is protectable in this forum.

■ Ohio does seek to challenge, however, a determination which is within the purview of this lawsuit and is not preempt-

---

1. Under the Energy Reorganization Act of 1974 (88 Stat. 1233, 42 U.S.C. § 5801 *et seq.*) the Atomic Energy Commission was abolished and its licensing and regulatory responsibilities vested in the newly-created NRC.

ed—that is, the basic determination that the utility defendants are under a duty to remove the spent fuel. Ohio asserts that the defendant utilities' trespass upon the Center via the continued storage of the fuel at the Center is justified by the common law privilege of public necessity. In essence Ohio seeks to examine the "need" for such removal and for resultant shipments. It contends that, despite NYSERDA's contentions, the spent fuel need not be moved from the Center and that a reasonable rental agreement between NYSERDA and the utility defendants could and should be arranged. The question then becomes one whether Ohio has a direct, substantial and legally protectable interest in the subject of this case so as to be permitted intervention as of right as to this admittedly basic issue.

Examination of the instant pleadings reveals the nature of the respective interests. The subject matter concerns the rights, liabilities and duties of the parties with regard to the nuclear waste which is in storage at the Center. NYSERDA seeks to compel the utility defendants to remove their fuel in order that the Center might be ready for the scheduled commencement of the DOE's West Valley Demonstration Project. NYSERDA also seeks to recover compensatory damages for the continued storage of the spent fuel at the Center by the utility defendants under the theories of trespass, breach of contract, and unjust enrichment.

Ohio has no basis in law or in equity for the relief it now seeks—that is, an opportunity to challenge this Court's prior determination that the utility defendants are under a duty to remove the spent fuel from the Center. The rights and liabilities arising from this dispute are particularly those of the parties herein and Ohio's only "interest" in the action is in seeking to prevent what it perceives to be the "unnecessary" shipment of defendants' property. Surely Ohio does not, and indeed can not, challenge NYSERDA's basic right as a property owner to seek a declaration that the utility defendants have no right to a continued storage at the Center. NYSERDA, as owner and operator of the Center, has demanded that the utility defendants remove their chattels. If NYSERDA had initially requested that the utility defendants remove their fuel and defendants had immediately complied with this request, Ohio would have essentially no right to seek to prevent such removal.

■ Ohio, in seeking to intervene, seeks to interpose the tenet that, even if the utility defendants are liable in trespass to NYSERDA, such trespass is justified under the common law notion of public necessity. Ohio thus asserts that it has a protectable interest in this litigation in that this Court's ruling upon such a defense will have an immediate effect upon it—i.e., if this defense is rejected, transportation of the fuel will commence through Ohio. Although these facts indicate that Ohio has an interest in this action, such is not determinative of whether it has a "direct, substantial, and *legally protectable*" interest. *S/V "Canada Goose I", supra* 641 F.2d at 320–321 (emphasis added). Moreover, this is a question which I need not, and indeed do not, reach at this juncture; whether the storage at the Center may continue has already been adequately developed by the utility defendants and disposed of.

■ Although an applicant for intervention as of right has the burden of showing that representation may be inadequate, the burden "should be treated as minimal." *Trbovich v. United Mine Workers,* 404 U.S. 528, 535 n. 10, 92 S.Ct. 630, 634 n. 10, 30 L.Ed.2d 686 (1972); *United States Postal Service v. Brennan, supra,* 579 F.2d at 191. The applicant, however, "must at least overcome the presumption of adequate representation that arises when it has the same ultimate objective as a party to the existing suit." *Brennan, supra,* at 191.

As in *Brennan,* the question before the court in which intervention is sought is strictly one of law—either the utility defendants were entitled to the benefits of the necessity defense or they were not. Moreover, although the inquiry concerning

the adequacy of existing representation for intervention purposes is usually viewed in the prospective sense, this Court, due to the chronology of events,[2] is able to view the adequacy of representation by the existing parties on this issue with the benefit of hindsight.

■ The determination of the adequacy of existing representation necessarily involves an assessment of factors which are within the discretion of the Court. *United States Postal Service v. Brennan, supra,* at 191. As I noted in a previous opinion in this case, Wisconsin, Comm.Ed. and the GPU defendants all argued that continued presence of the spent nuclear fuel at the Center was privileged as a public necessity. *See* 561 F.Supp. at 967, 974-975. The fact that the utility defendants have been unsuccessful in ultimately advancing such arguments is not equivalent to inadequacy of representation. With the benefit of such hindsight, it may affirmatively be stated that Ohio's interest in raising the necessity defense to removal as a precursor to interstate transportation *has* been adequately represented.

The utility defendants clearly and ably presented their view that removal of the spent fuel from the Center was not in the public interest in that any removal of such fuel from the Center would increase the risks associated with removal and transportation of spent fuel when compared with the risk associated with continued storage at the Center. The utility defendants similarly raised and argued the issue which Ohio seeks to now raise—to wit, that the transportation of such fuel is unnecessary, particularly when it may be highly likely that such fuel will have to again be moved when a federal depository for spent fuel is constructed. The utility defendants raised these issues on numerous occasions in their legal briefs and at oral argument on NYS-ERDA's motion for summary judgment. *See* Affidavit of Sol Burnstein at 11, (filed July 8, 1982); Affidavit of George P. Rifakes at 11 (filed July 8, 1982); Affidavit of Bernard W. Cherry at 34 (filed July 8, 1982); Memorandum of the GPU Defendants in Opposition to Plaintiff's Motion for Summary Judgment at 26-27; Brief for Comm. Ed. and Wisconsin in Opposition to Plaintiff's Motion for Summary Judgment at 33-35. Ohio has not overcome the presumption of adequate representation and thus has failed to show that representation was inadequate.

As noted in my previous decision, the "public necessity" justification for unauthorized entry onto the land of another is permissible for the purpose of averting an imminent public disaster. *See Restatement (Second) of Torts* § 196; 561 F.Supp. at 974. Moreover, I also noted that defendants had argued that there exists some increased risk to the public from the transportation of nuclear fuel. Ohio asserts that because I had noted that "[n]one of the defendants urges that there is any considerable risk involved in transporting the nuclear fuel" and that "[d]efendants have not pointed to a single disastrous incident in the history of the transportation of spent nuclear fuel," *id.* at 975, that its interests were not aggressively advanced and are not adequately protected by the existing parties and that it wishes to present evidence that nuclear transportation does involve considerable risks to the public and that those risks outweigh the risks of leaving the fuel at the Center. It then argues that the claim it now wishes to make has

**2.** One of the factors which must be weighed in determining the propriety of intervention as of right under rule 24(a)(2) is the timeliness of such application for intervention. Ohio has stated that it was first aware of this litigation when the NRC notified it in July, 1983 of proposed transfer of fuel through Ohio. Factors to consider in weighing timeliness are "(a) the length of time that the applicant knew of his interest but failed to intervene and (b) prejudice to existing parties from failure to promptly in-

tervene." *Brennan, supra,* 579 F.2d at 192 (Oakes, J., dissenting). The instant motion was filed by Ohio August 29th, which in light of the nature of this lawsuit is timely, and no prejudice inured to any of the parties by the intervening time period in that the utility defendants had been informed of their duty to remove the spent fuel from the Center prior to the NRC's notification. Accordingly, this application cannot be viewed as being untimely.

not even been advanced by the utility defendants.

Ohio fails to note, however, that the utility defendants had a strong interest in obtaining a ruling that the public necessity defense prevents the shipment of the fuel but that I also determined that with "a correct understanding of the allegedly protective rule—that only a 'true imminent disaster' will support a privilege based on public necessity—it is necessary to conclude as a matter of law that no reasonable person could believe that any of the consequences that defendants seek to avoid by leaving their spent fuel at the Center rise to the level of imminent public disaster within the plain significance of those words." *Ibid.* The fact that the utility defendants failed to assert that there are "considerable risks" associated with the transportation of nuclear fuel is not equivalent to inadequate representation; it is merely a more reasonable estimation. As established in recent DOT studies, the risks and probabilities associated with the transportation of nuclear fuel are not what Ohio terms as "considerable." *See City of New York v. State of New York, supra,* at 746–752. Moreover arguments by the utility defendants which would have advanced the occurrence of "considerable risks" rather than "increased risks" would have met a similar fate. In sum, viewing the effort with which the utility defendants advanced their public necessity claim, it cannot be stated that Ohio was not adequately represented by the existing parties. *Accord, Valley v. Rapides Parish Sch. Bd.,* 646 F.2d 925, 942 (5th Cir.1981) (holding that intervention may be denied where existing parties have advanced the position which the prospective intervenors seek to promote, or where the district court has already considered and passed on the matter).

Ohio's claim that the transport of nuclear fuel raises "considerable risks" follows closely its proposed cross-claims against Wisconsin and Comm. Ed. that the shipment of nuclear fuel through Ohio by these defendants constitutes an "absolute nuisance." Hence Ohio asserts a claim under an area of the law which I have previously determined to be pre-empted by federal law. *See New York State Energy Research and Development Authority v. Nuclear Fuel Services,* No. 81–18, slip op. at 6 (W.D.N.Y. March 5, 1982). Under consideration at that juncture was whether the Sierra Club could intervene in that action on the ground that the conditions at the Center constituted a public or private nuisance. Having reviewed *Train v. Colorado Pub. Int. Research Group,* 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976), *Northern States Power Company v. State of Minnesota,* 447 F.2d 1143 (8th Cir.1971), *aff'd* 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972), *Washington State Bldg. & Const. v. Spellman,* 518 F.Supp. 928, 931–932 (E.D.Wash.1981), *aff'd* 684 F.2d 627 (9th Cir.1982), *cert. denied sub nom. Don't Waste Washington Legal Defense Foundation v. Washington,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983), *Coyne v. Kerr-McGee, Chem. Corp.,* Civ. 76–2472 (N.D.Ill., Feb. 11, 1977), the relevant sections of the Atomic Energy Act of 1946 and subsequent additions and amendments thereto, I concluded that Congress clearly intended to exert full federal control over private possession of nuclear wastes and has yielded control to the states only under narrowly prescribed circumstances. Accordingly, I concurred with the holding of the court in *Coyne v. Kerr-McGee, supra,* slip op. at 4, that Congress has pre-empted "not only * * * state legislative or administrative schemes regulating radiation hazards, but also * * * the application of state common law nuisance doctrines to those matters." It was thus determined that the Sierra Club, in proposing its nuisance action, lacked an interest the protection of which would have been impaired had intervention been denied and that it could not intervene as of right to protect this interest under rule 24(a)(2).

Having since reviewed the United States Supreme Court's determination in *Pac. Gas & Elec. v. St. Energy Resources Conserv., supra* at page 22, and the subsequent relevant decisions of the various appellate

courts—*see, e.g., City of New York v. State of New York, supra; People of State of Ill. v. General Elec. Co.,* 683 F.2d 206, 215 (7th Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *People of State of Ill. v. Kerr-McGee Chem. Corp.,* 677 F.2d 571, 581 (7th Cir.), *cert. denied* 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982), and *Silkwood v. Kerr-McGee,* 667 F.2d 908, 922–923 (10th Cir. 1981), *appeal docketed* 50 U.S.L.W. 3949 (June 1, 1982) (No. 81–2159),—in addition to the cases previously cited, I am further convinced of the correctness of my prior ruling and that the federal government has expressly and impliedly pre-empted regulation by the states of the radiation hazards associated with nuclear materials. State common law nuisance doctrines have been pre-empted by federal law and the mere shipment of such nuclear fuel, without more, cannot be found to constitute common law nuisance in light of the express authorization for such transportation under federal law. Accordingly Ohio can not intervene as of right.

■ From the foregoing it also appears that Ohio cannot intervene permissively under rule 24(b)(2), which requires that the "applicant's claim of defense and the main action have a question of law or fact in common." Among the factors to be considered in determining if intervention should be permitted are whether such intervention will unduly delay or prejudice adjudication of rights of original parties, whether the applicant will benefit by intervention, the nature and extent of the intervenor's interests, whether the interests are adequately represented by other parties and whether the party seeking intervention will significantly contribute to full development of the underlying factual issues and to a just and equitable adjudication of the legal questions presented. *United States Postal Service v. Brennan, supra,* 579 F.2d at 191–192; *Spangler v. Pasadena City Board of Education,* 552 F.2d 1326, 1329 (9th Cir.1977).

■ At this juncture intervention by Ohio would be, essentially, without purpose. With regard to the numerosity of shipments of nuclear fuel or the proposed routes to be taken in such transportation, those issues are outside the scope of this lawsuit and must be presented to the NRC and the DOT. Although I do not feel that such intervention by Ohio would unduly delay or prejudice adjudication of rights of original parties, it is difficult to perceive how Ohio would benefit by intervention in this action, when the issue it seeks to raise —i.e., the basic determination that the utility defendants are under an obligation to remove the spent fuel from the Center— has already been determined and Ohio's interest, if any, in that adjudication and other attendant issues have been more than adequately represented by the existing parties. In sum, there is nothing which Ohio seeks to accomplish that can be determined at this juncture or in the future in this lawsuit.

■ Finally, as NYSERDA and NFS have correctly noted, permissive intervention would be improper in this instance as the result of jurisdictional requisites. As numerous courts have noted, an applicant for permissive intervention under rule 24(b)(2) must establish an independent basis for jurisdiction. *See Moosehead San. Dist. v. S.G. Phillips Corp.,* 610 F.2d 49, 52 n. 5 (1st Cir.1979); *Reedsburg Bank v. Apollo,* 508 F.2d 995, 1000 (7th Cir.1975); *Blake v. Pallan,* 554 F.2d 947, 955–956 (9th Cir.1977); *Beach v. KDI Corporation,* 490 F.2d 1312, 1219–1320 (3d Cir.1974); *Francis v. Chamber of Commerce of United States,* 481 F.2d 192, 195 n. 6 (4th Cir.1973); *Babcock & Wilcox Co. v. Parsons Corp.,* 430 F.2d 531, 540–542 (8th Cir.1970); *Diamond v. Terminal Alabama State Docks,* 421 F.2d 228, 236 (5th Cir.1970); *National am. Corp. v. Federal Rep. of Nigeria,* 425 F.Supp. 1365, 1368 (S.D.N.Y.1977); *Usery v. Brandel,* 87 F.R.D. 670, 678–679 (W.D. Mich.1980). The instant action is jurisdictionally premised solely upon diversity of citizenship of the parties under 28 U.S.C. § 1332, there being no federal question. Ohio cannot avail itself of such jurisdiction in that there is no diversity between itself and any of the present parties. *See State Highway Comm'n. v. Utah Constr. Co.,*

278 U.S. 194, 200, 49 S.Ct. 104, 106, 73 L.Ed. 262 (1929); *People of State of Ill. v. Kerr-McGee Chem. Corp., supra,* 677 F.2d at 575 n. 5 (both noting that a state is not a citizen of any state for purposes of diversity jurisdiction and that there can thus be no diversity jurisdiction when a state is a real party in interest to a lawsuit). Ohio does not suggest an alternative basis of jurisdiction. Consequently, there is no independent jurisdictional basis supporting Ohio's motion to intervene under rule 24(b)(2).

Ohio's motion to intervene therefore must be and hereby is ORDERED denied in all respects. However, in view of Ohio's evident interest and commitment in protecting the health, safety and welfare of its citizens, as outlined in its memorandum in support of the instant motion, I will thoroughly review and consider any briefs which it may wish to submit as an *amicus curiae,* relevant to further proceedings herein. In order to enable Ohio to participate in this limited role, it is further hereby ORDERED that the parties hereto shall timely serve upon counsel for Ohio copies of all pertinent correspondence, moving papers, affidavits and memoranda of law hereafter directed to the Court or to an opposing party. The Clerk of this Court will provide such counsel with copies of correspondence or orders issuing henceforth from this court.