**MAMMOET SHIPPING COMPANY, B.V., Plaintiff,**

**and**

**the City of New York, Plaintiff-Intervenor,**

**v.**

**MARK TWAIN (a/k/a Mark Twain Show Boat), her engines, boilers, etc.; Mississippi Holdings Limited, Defendants.**

**No. 83 Civ. 8530 (RWS).**

United States District Court, S.D. New York.

June 3, 1985.

---

Kirlin, Campbell & Keating, New York City, for plaintiff; J. Scot Provan, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for plaintiff-intervenor; Evelyn Jonas, New York City, of counsel.

Feldman & Carlinsky, Mineola, N.Y., for defendant Mississippi Holdings Ltd.; Ivan Feldman, Mineola, N.Y., of counsel.

## OPINION

SWEET, District Judge.

This admiralty action was brought by Mammoet Shipping Company, B.V. ("Mammoet") against the MARK TWAIN (a/k/a Mark Twain Showboat) and Mississippi Holdings Limited to recover on a bill of lading. The City of New York now moves to intervene as a party in this action, and upon such intervention for an order granting injunctive relief enforcing the judgment of the Civil Court of the City of New York issued against Mississippi Holdings Limited. The motion is granted.

In November 1983 Mammoet commenced this action against the vessel MARK TWAIN and her owner, Mississippi Holding Limited ("Mississippi"). Mammoet sought the following: 1) a warrant for the arrest of the MARK TWAIN; 2) judgment for $447,220.60, and 3) sale of the MARK TWAIN to pay the judgment. Mammoet alleged jurisdiction in this court by virtue of diversity of citizenship and a maritime contract in admiralty. On or about May 9, 1984 the MARK TWAIN was arrested, and this court issued an order appointing Mammoet as substitute custodian for the safe keeping of the MARK TWAIN during the pendency of this action.

The MARK TWAIN has been berthed at Pier 84, North River, New York, New York, which is owned and operated by the City of New York. On December 11, 1984, the Civil Court of the City of New York, County of New York, entered a final judgment of possession in favor of the City of New York ("City") as to the berthing space occupied by the MARK TWAIN.

**Facts**

The MARK TWAIN is a riverboat which was built in 1896. The vessel has been renovated for use as a restaurant and showboat. Her owner, Mississippi, a Canadian corporation, contends that in June of 1982 the City invited Mississippi to dock the MARK TWAIN at a berthing space at a pier in Manhattan on the Hudson River for the purposes of establishing a restaurant business and showboat. Mississippi asserts that the City had promised to permit such operation of the MARK TWAIN. In reliance upon the City's alleged promises, Mississippi contracted with Mammoet, a Dutch corporation, to ship the MARK TWAIN from Toronto, Canada to New York aboard Docklift 1. After the arrival of the MARK TWAIN in New York, the City refused to permit the boat owners to operate their business.

Mississippi then arranged to rent berthing space from the City on a day-to-day basis at the rate of $100.00 per day. Negotiations with the City to obtain a permanent site or the necessary permits were unsuccessful. Mississippi asserts that the inability to rent a permanent berthing site from the City prevented it from taking actions to sell or lease the MARK TWAIN. According to Mississippi, its inability to operate or sell the MARK TWAIN caused it to delay payment to Mammoet. This delay precipitated the present suit brought by Mammoet.

The City maintains that its use of Pier 84 is impaired by the presence of the MARK TWAIN. The City has obtained a judgment of possession and a money judgment in the amount of $7,371.00 against Mississippi from the Civil Court of the City of New York as to the berthing space occupied by the MARK TWAIN. The City now seeks to intervene and requests this court to enforce its judgment.

Since the initiation of the action, a number of conferences have been held with counsel for Mammoet and Mississippi with respect to the resolution of the dispute. Both of the original parties have explored the possibilities of selling or operating the MARK TWAIN, to date without success. Negotiations for its sale have been hampered by the difficulties potential buyers have had in procuring alternative permanent sites for the MARK TWAIN.

## Motion to Intervene

The City's application for leave to intervene, which is unopposed, is based on Fed. R.Civ.P. 24. Under Rule 24(a), a party is entitled to intervene as of right if he claims an interest relating to the property which is the subject of the action "and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest."

■ Although the City's claim for relief involves the pier and not the vessel, the City has demonstrated a sufficient interest in the disposition of the original lawsuit to justify allowing intervention as of right. The requirement that a party have a significantly protectable interest relating to the subject matter of the case "cannot be taken to mean that one must have 'a specific legal or equitable interest in the case'." *N.Y. State Energy R & D v. Nuclear Fuel Services*, 102 F.R.D. 18, 21 (W.D.N.Y.1983) (citations omitted). As a practical matter, the City's ability to protect its legal interest in the pier may be impacted by the order of this court granting Mammoet an attachment upon the MARK TWAIN. Although the City's intervening complaint fails to allege the jurisdictional amount for a diversity action, intervention will be permitted since a party intervening as of right need not establish an independent source of jurisdiction. *N.Y. State Energy R & D v. Nuclear Fuel Services, supra*, 102 F.R.D. at 22; *Coca Cola Bottling v. Coca Cola Co.*, 98 F.R.D. 254 (D.C.Del.1983). The City's application to intervene as a party to this action is granted.

## Motion for Injunctive Relief

The City seeks to have this court enforce the judgment of the Civil Court of the City of New York granting it the right of possession of the berthing space. Mammoet contends that the Civil Court lacked jurisdiction to hear the City's action for repossession of the berth occupied by the MARK TWAIN. In support, Mammoet relies on its characterization of the relationship between the City and the MARK TWAIN, which involved the lease of dock space, as

giving rise to a maritime contract. Mammoet claims specifically that the Civil Court has no admiralty jurisdiction over a maritime contract.

■ It is well established that if a contract relates to a ship in its use as such, or to commerce in navigable waters, such a contract is the subject of maritime law and the case is within admiralty jurisdiction, whether the performance of the contract is to occur on land or at sea. *Pierside Terminal Operators, Inc. v. M/V FLORIDIAN*, 423 F.Supp. 962 (1976 E.D. Va.). In the present case, however, the relevant contract does not relate to a ship in use as a ship. The vessel in question was transported to New York as the cargo of another ship for the purpose of establishing a stationary restaurant. It was stored at Pier 84 pending its sale or lease to an as yet unfound buyer." The lease of the berth at Pier 84 by the owners of the MARK TWAIN and resulting dockage or wharfage fees do not stem from the use of the MARK TWAIN as a ship *per se*. On the contrary, this contract arose out of the need to store the vessel.

■ Admiralty is limited to vessels actively in navigation or only temporarily withdrawn, and "[w]here the facts indicate that a vessel has been indefinitely withdrawn from navigation, she is also regarded as withdrawn from admiralty jurisdiction, and services rendered to her in that state do not give rise to maritime liens." *See also* Benedict on Admiralty § 233; *ABACO Queen, Tri-Centinental Financial Corp. v. Tropical Marine Enterprises, Inc.*, 1958 AMC 2507. *Marubeni-Iida (America) Inc. v. Nippon Yusen Kaisha*, 207 F.Supp. 418 (S.D.N.Y.1962), cited by Mammoet, is not to the contrary. In that case, the court stated that "[t]he general rule is that a maritime contract is one having reference to maritime services or maritime transactions." *Id.* at 419. Since the relationship between Mississippi and the City did not involve a maritime contract, it was not within the scope of admi-

ralty jurisdiction, and the Civil Court had jurisdiction to entertain the City's claim.

Mammoet alternatively asserts that the Civil Court lacked jurisdiction to hear the City's claim because the MARK TWAIN was already in the custody of this court. To support this assertion Mammoet cites *Ciel y Cia v. Nereide. Soc.*, 1983 AMC 1982 (E.D.Va.), for the proposition that under the doctrine of *custodia legis*, once a vessel is in the custody of one court, other courts should defer to the jurisdiction of that court. *Ciel y Cia* involved a controversy over whether a vessel should be administered in admiralty or in bankruptcy. The ship in question was within the control of the district court at the time the bankruptcy petition was filed. The court reversed the decision of the Bankruptcy Court to remove the proceedings from the district court.

■ It is well settled "that the court, state or federal, which first acquires jurisdiction in a proceeding *in rem* retains jurisdiction to the exclusion of the other until final adjudication." *Burbridge Foundation, Inc. v. Reinholdt & Gardner*, 496 F.2d 326 (1974 C.A.Ark.) (citations omitted). In *Burbridge Foundation*, stocks were attached in state court in connection with divorce proceedings. The petitioner brought an action in federal court against the stake holder seeking the relinquishing of the stocks. The case in federal court was dismissed for lack of jurisdiction because the stocks were the subject of a prior state court proceedings which was then pending.

■ In the present case, however, the proceeding before this court involves the attachment of the MARK TWAIN for the purpose of ensuring a sufficiency of funds to compensate Mammoet should it succeed in its admiralty claim. The judgment of possession of the Civil Court in favor of the City was issued with regard to the berthing space. Since the subjects of these two proceedings are different, the prior attachment of the MARK TWAIN does not remove the City's claim from the jurisdiction of the state court. The money judgment awarded to the City against Mammoet does not alter this conclusion. The Civil Court did not order disposition of the MARK TWAIN in connection with that portion of the judgment.

■ Mammoet has failed to establish that the Civil Court's judgment should not be enforced because the court lacked jurisdiction. Because the Civil Court's judgment is entitled to full force and credit, this court will not undertake a review of the merits of the Court's decision, and the City is entitled to have the judgment enforced. At the same time, however, Mammoet is entitled to have its attachment of the MARK TWAIN preserved and this court has an obligation to use its equitable powers to preserve its jurisdiction over the vessel. While the City has a right to possession of its pier, it would be inequitable to enforce that right at the expense of Mammoet especially in light of the fact that the City is in a significantly better position than Mammoet to find an alternate space for the vessel. Accordingly, Mammoet, as custodian of the MARK TWAIN, is directed to remove the vessel from the pier to any location provided by the City within the jurisdiction of this court so that the attachment will be maintained. The cost of moving the vessel and wharfage charges will be undertaken by Mammoet as custodian and will be considered *custodia legis* expenses in relation to the attachment.

The above order will be stayed for twenty (20) days to allow Mammoet or the City to make further application in light of the above opinion.

IT IS SO ORDERED.