James GOODMAN, d/b/a Captain J's
Marina, Appellee,

v.

1973 26 FOOT TROJAN VESSEL, ARKANSAS REGISTRATION NO.
AR1439SN; Frank Booth, Appellants.

Nos. 87–1504, 87–1573.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1988.

Decided Oct. 5, 1988.

Rehearing and Rehearing En Banc
Denied Nov. 18, 1988.

Fines F. Batchelor, Jr., Van Buren, Ark., for appellants.

Willard C. Smith, Ft. Smith, Ark., for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and ROSS, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

This admiralty action arises out of the claim of James Goodman (Captain J), d/b/a Captain J's Marina, for sums due him for furnishing dockage and other necessities to Frank Booth's boat, a 26–foot Trojan vessel. We agree with the district court [1] that Captain J had a maritime lien on the boat under 46 U.S.C.App. § 971. We hold, how-

---

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

ever, that the court lacked *in rem* jurisdiction because the boat was never arrested, and we therefore reverse the order of foreclosure against the boat. We affirm the court's *in personam* jurisdiction over Booth and the award of $5,178 in damages. We reverse the award of attorney's fees because the district court did not find that Booth had acted in bad faith.

## I.

Captain J's Marina is located on the Arkansas River, a navigable waterway in Arkansas. Beginning in the late 1970's, Booth rented dock space equipped with an electrical meter to moor his boat. The parties had no written agreement. Because Booth's rental payments were often tardy, Captain J began charging Booth late fees of $10 per month. In February 1981, Captain J increased the rent. In an attempt to force Booth to become current with his payments, Captain J chained and locked the boat to his dock for approximately two weeks. Eventually, Booth stopped making payments altogether. In November 1985, the boat sank during a heavy rainstorm. When Captain J phoned Booth to tell him that his boat had sunk, Booth replied that he was not going to put any more money into it. Three months later, after Booth had failed to take any action to raise the boat, Captain J hired divers to have the boat raised. Since that time the boat has been in dry storage at the marina.

Claiming a maritime lien for the amounts due under the wharfage contract, Captain J filed this action *in rem* against the boat and *in personam* against Booth. Captain J also sought $3,000 for raising the boat and $1,200 for the damage that the boat had caused to his docking facilities when it sank. The court overruled Booth's Rule 12 motion to dismiss for lack of subject matter and personal jurisdiction. Booth filed a counterclaim alleging that Captain J had wrongfully deprived him of the use of his vessel and had not properly cared for it. After a bench trial, the district court awarded Captain J $2,178 for rent and $3,000 for raising the boat. The court issued a decree of foreclosure on the boat and held that Booth would be personally liable for any deficiency. The court dismissed Booth's counterclaim with prejudice. The court granted Captain J's motion for attorney's fees in the amount of $3,337. Booth filed a supersedeas bond to stay the execution of the judgment and appealed to this court.

## II.

### A. *Subject Matter Jurisdiction*

Booth first contends that the district court lacked subject matter jurisdiction. He argues that admiralty jurisdiction is limited to the commercial shipping industry, whereas his boat is a pleasure boat. Additionally, Booth claims that his boat is a "dead ship" because Captain J chained and locked it to the dock in early 1981, its Arkansas registration expired in 1982, and it was stored on land after being raised. Captain J responds that the court had subject matter jurisdiction because the case arose out of a maritime contract. We agree with Captain J.

Federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1) (1982). A contract dispute falls within admiralty jurisdiction if the subject matter of the contract is maritime.[2] *Royal Ins. Co. of America v. Pier 39 Ltd. Partnership*, 738 F.2d 1035, 1036 (9th Cir.1984). What is maritime is not self-evident, and must be determined by analyzing the case law. "The boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than

---

**2.** In contrast, admiralty tort jurisdiction has traditionally depended on a locality test, inquiring whether the wrong occurred on navigable waters. In *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Court added an additional requirement: the wrong must bear a significant relationship to traditional maritime activity. *Id.* at 268, 93 S.Ct. at 504. In *Executive Jet*, an airplane crashed into Lake Erie. The Court modified the pure locality test to avoid the absurdity of having aviation tort claims brought under admiralty jurisdiction.

spacial, have always been difficult to draw." *CTI–Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 379 (2d Cir.1982) (quoting *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961)). For example, a contract to build a ship is not within admiralty jurisdiction, but a contract to repair a ship is. A contract to purchase a vessel falls outside admiralty jurisdiction, but a contract to charter a vessel is within it. *Id.* at 380 n. 4. Generally, contracts to provide services or supplies to a vessel are within admiralty jurisdiction. *Id.* at 379.

■ Contracts, such as this one, providing wharfage to a particular vessel are maritime. *Royal Ins. Co. of America v. Pier 39 Ltd. Partnership*, 738 F.2d at 1037; *Humphreys Rys., Inc. v. S/V Nils S*, 603 F.Supp. 95, 98 (E.D.Va.1984). Booth nevertheless contends that admiralty jurisdiction is lacking because his boat is not a commercial vessel. We have held that small pleasure crafts engaged in noncommercial navigation on navigable waters [3] do fall within admiralty jurisdiction. *St. Hilaire Moye v. Henderson*, 496 F.2d 973, 976 (8th Cir.), *cert. denied*, 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974). The term "vessel" in admiralty law is not limited to ships engaged in commerce but extends to "every description of watercraft * * * used or capable of being used, as a means of transportation by water." 1 U.S.C. § 3. We therefore conclude that the subject matter of this contract is maritime.

■ We also reject Booth's contention that admiralty jurisdiction is lacking because his boat is a dead ship. Under the dead ship doctrine, a ship loses its status as a vessel when its function is so changed that it has no further navigation function. For example, in *Mammoet Shipping Co., B.V. v. Mark Twain a/k/a Mark Twain Showboat*, 610 F.Supp. 863, 866–67 (S.D.N.Y.1985), a riverboat built in 1896 had been renovated for use as a restaurant and showboat. The riverboat was docked at a berthing space at a pier in Manhattan on the Hudson River. The court held that there was no admiralty jurisdiction over the contract for the lease of dock space because the contract did not relate to a ship in use as a ship.

Merely because a boat's registration has expired, however, or because a boat is in need of repair does not mean that it has no further navigation function. *See Hercules Co. v. Brigadier General Absolom Baird*, 214 F.2d 66, 69 (3d Cir.1954). Additionally, a boat stored in dry dock has not necessarily been withdrawn from navigation. In *American Eastern Dev. Corp. v. Everglades Marina, Inc.*, 608 F.2d 123, 125 (5th Cir.1979), two pleasure boats or yachts stored in dry storage racks at a marina to protect them from salt water were damaged by fire. *Id.* at 124. The court held that the dry dock was a substitute for wet mooring and that admiralty jurisdiction extends to modern methods of docking or wharfage.

We therefore reject Booth's argument that admiralty jurisdiction was lacking because his boat was stored on shore after it sank and because it was in need of repair. Furthermore, Captain J correctly points out that the vessel's status at the time that the parties contracted is the determinative factor. At the time the parties entered into the contract for wharfage, the boat was powered by a 215 horsepower engine and was operable.

Accordingly, for all of the above reasons, we hold that the court had subject matter jurisdiction over this action.

## B. *In Rem and In Personam Jurisdiction*

We next turn to Booth's challenge of *in rem* and *in personam* jurisdiction.

The Maritime Lien Act, 46 U.S.C. § 971 states:

> Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessities, to any vessel, whether foreign or domestic, upon the

---

**3.** Navigable waters have a present capacity to sustain commercial shipping. *Livingston v. United States*, 627 F.2d 165, 170 (8th Cir.1980), *cert. denied*, 450 U.S. 914, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981).

owner of such vessel, * * * shall have a maritime lien on the vessel, which may be enforced by suit *in rem,* and it shall not be necessary to allege or prove that credit was given to the vessel.

Claims under a maritime contract for wharfage give rise to a maritime lien. *See Western Wave,* 77 F.2d 695, 698 (5th Cir. 1935). An *in rem* remedy may be pleaded along with, or in the alternative to, an *in personam* claim. "The advantage of combining *in rem* and *in personam* actions is that a deficiency judgment may be entered against *in personam* defendants for the excess of the amount of damages over the fair market value of the vessel or other maritime property involved." Schoenbaum, *Admiralty and Maritime Law,* 621 (1987).

▮ The first step in an action *in rem* is the filing of a verified complaint that describes the boat and alleges that a maritime lien exists. *See* Supplemental Admiralty Rule C(2). The district court found that Captain J had met the requirements of Rule C. Captain J, however, failed to file an affidavit to verify his complaint. More importantly, although Captain J requested an order and warrant of arrest, no warrant was issued, and the boat was never arrested, deficiencies in procedure fatal to Captain J's *in rem* action, for before a court may exercise jurisdiction over a vessel, the vessel must be arrested within the court's territorial jurisdiction. *Cactus Pipe & Supply Co., Inc. v. M/V MontMartre,* 756 F.2d 1103, 1107 (5th Cir.1985). *See also Alyeska Pipeline Service Co. v. Vessel Bay Ridge,* 703 F.2d 381, 384 (9th Cir.1983), *cert. denied,* 467 U.S. 1247, 104 S.Ct. 3526, 82 L.Ed.2d 852 (1984).

▮ Thus, the district court lacked *in rem* jurisdiction over the boat and lacked the power to order that the boat be sold. We find no reason, however, to overturn the district court's decision to deny Booth's motion to dismiss for lack of personal jurisdiction. Fed.R.Civ.P. 7(b)(1) provides that a motion "shall state with particularity" the grounds on which it is based. *See Davis v. Hill Engineering, Inc.,* 549 F.2d 314, 325 (5th Cir.1977). The particularity requirement protects district courts from being subject to reversal for rulings on which they did not have the benefit of argument from the opposing side and ensures that opposing parties will have notice of their opponents' contentions. *Id.* Booth failed to indicate the grounds for his jurisdictional challenge or to provide the court with facts that would be relevant in determining whether *in personam* jurisdiction was lacking. Accordingly, we hold that Booth waived any objection to personal jurisdiction and affirm the district court's judgment against him. *Cf. Pizani v. M/V Cotton Blossom,* 669 F.2d 1084, 1090 (5th Cir.1982) (affirming *in personam* jurisdiction although *in rem* jurisdiction was lacking).

## C. Attorney Fees

Booth argues that the district court erred in awarding attorney's fees to Captain J as the prevailing party. We agree.

In the absence of a specific statute authorizing a fee, the traditional American rule provides that the prevailing party in federal litigation is generally not entitled to attorney's fees. *Alyesha Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 269, 95 S.Ct. 1612, 1627, 44 L.Ed.2d 141 (1975). Although under Fed.R.Civ.P. 54(d) the court may grant "costs" to the prevailing party, attorney's fees do not fall within the statutory definition of costs. *See* 28 U.S.C. § 1920; *see also Pershern v. Fiatallis North America, Inc.,* 834 F.2d 136, 140 (8th Cir.1987).

▮ Booth correctly points out that no statute permits the award of attorney's fees in admiralty cases. Thus, attorney's fees are not ordinarily awarded in admiralty cases. *Cantieri Navali Riuniti v. M/V Skyptron,* 802 F.2d 160, 165 (5th Cir.1986). An exception is made to this general rule when the losing party has acted in bad faith. *Id.; Seguros Banvenez, S.A. and C.V.G. v. S/S Oliver Dresher,* 761 F.2d 855, 861 (2d Cir.1985). Here, the district court made no findings concerning whether Booth had acted in bad faith in opposing Captain J's claim. Likewise, Captain J's motion for attorney's fees did not state the

basis for an award. Although Booth may have had no good reason to abandon his boat at the marina and to stop making rent payments, at the time of trial the parties had a good faith dispute over the exact amounts due. Indeed, the district court granted an award for the charges for electricity that was substantially below the amount that Captain J claimed was due him. Additionally, Booth at no time agreed to indemnify Captain J for damages that might arise from his negligence. *Cf. Ohio River Co. v. Great Lakes Carbon Corp.*, 714 F.2d 65, 67 (8th Cir.1983). We therefore conclude that the district court erred in awarding attorney's fees without making sufficient factual findings on the issue of Booth's bad faith, and we accordingly reverse the award of fees.[4]

### III.

We reverse the decree of foreclosure for lack of *in rem* jurisdiction. We affirm the judgment of $5,178 against Booth, but reverse the award of attorney's fees.

---

4. We find that the other issues raised by Booth are without merit.