**SOUTHWEST MARINE OF SAMOA, INC., Plaintiff**

**v.**

**The M/V KWANG MYONG #71, its Cargo, Freight, Equipment, Engines, Mast, Boats, Anchors, Cables, Chains, Rigging, Tackle, Furniture and All Other Necessaries Appertaining to the Vessel, Defendant in Rem, and KOREA WONYANG FISHERIES CO. LTD., a Korean Corporation, STAR-KIST FOODS, INC., and STAR-KIST SAMOA INC., Defendants in Personam**

High Court of American Samoa
Trial Division

CA No. 105-92

September 14, 1993

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and BETHAM, Associate Judge.

Counsel: For Plaintiff, Robert A. Dennison III
For Defendant Star-Kist Foods, Inc., and
Star-Kist Samoa, Inc., Roy J.D. Hall, Jr.

On Motion for Reconsideration:

Plaintiff seeks reconsideration of the court's decision and order denying plaintiff's motion for "default judgment in rem." Among other things, plaintiff argues clear error on the court's part "in concluding that the Plaintiff's claim for moorage charges is not maritime in nature and that a maritime lien against the vessel does not therefore exist."

The court did not, as plaintiff seems to argue, hold that moorage charges may not give rise to maritime liens.[1] Rather, the court found on the evidence that the M/V Kwang Myong #71 was not a vessel in

---

[1] Indeed, we cited to *Miles v. States Marine & Commercial Co.*, 286 F. 286, 288 (E.D.N.Y. 1922), and 1 Benedict on Admiralty § 233, at 15-26 to 15-27, for the exact opposite proposition, to wit; "[w]harfage charges *can* give rise to a maritime lien." 23 A.S.R.2d 156, 158 (Trial Div. 1993) (emphasis added). However,

> [n]ot every contract for wharfage . . . will provide a sufficient ground to invoke the admiralty jurisdiction. The agreement must, additionally, aid or abet maritime commerce or navigation. Illustrative of this is *Boera Brothers v. United States*, (ED NY 1924) 1924 AMC 1474, where the admiralty court rightly refused jurisdiction of an action to recover compensation for wharfage furnished a vessel laid up and withdrawn from navigation. The soundness of this decision cannot be questioned when it is remembered that the only justification for the existence of a separate body of admiralty laws is to further maritime commerce or, arguably, navigation. Most certainly providing wharfage to a structure withdrawn from navigation for an indefinite future period does not measurably enhance either maritime commerce or navigation and, consequently, cannot logically be deemed maritime.

7A Moore's Federal Practice ¶ .230[4.-4], at 2822-2823.

navigation and therefore concluded under the dead-ship doctrine that plaintiff's moorage charges were not maritime in nature and enforceable under *in rem* process.

Under the dead-ship doctrine, a vessel which has been permanently removed from navigation (and so is a "dead" ship) does not attract liens of a maritime nature, and any watercraft deemed to be "dead" are outside a court's admiralty jurisdiction. Annotation, *What Is a "Vessel" Subject to a Maritime Lien Under 46 USC § 971*, 3 A.L.R. Fed. 882, 891-95 (1970 & Supp. 1990); *see Goodman v. 1973 26 Foot Trojan Vessel*, 859 F.2d 71, 73 (8th Cir. 1988) (citing *Mammoet Shipping Co. B.V. v. Mark Twain*, 610 F. Supp. 863, 866-67 (S.D.N.Y. 1985)).[2]

Additionally, plaintiff argues clear error on the court's part in finding that the M/V Kwang Myong #71 was not a vessel in navigation. This is essentially a quarrel with the trial court's findings of fact. Even under the newer, broadened definition of a vessel in navigation,[3] the evidence on record is ample to support the court's finding that the M/V Kwang Myong #71 was, at all relevant times, no longer a vessel in navigation. The vessel was abandoned by her owner--after the crew left,

---

[2] Adapting to new conditions, "[a]dmiralty jurisdiction has . . . changed as 'new conditions give rise to new conceptions of maritime concerns.'" *American E. Dev. Corp. v. Everglades Marina, Inc.*, 608 F.2d 123, 125 (5th Cir. 1979) (quoting *Alabama Dry Dock & Shipbuilding Co. v. Kininess*, 554 F.2d 176, 179 (5th Cir. 1977), *cert. denied* 434 U.S. 903 (1977)). It thus appears that the rule concerning what is a "vessel" subject to maritime jurisdiction has been liberalized. Over the years, courts have departed from "an older, more restrictive interpretation of the maritime lien" by broadening the definition of a "vessel" in navigation. *See City of Erie v. S/S North American*, 267 F. Supp. 875, 878-79 (W.D. Pa. 1967) (comparing *The Poznan*, 9 F.2d 838 (2d Cir. 1925), with *The Artemis*, 53 F.2d 672 (S.D.N.Y. 1931), and *The Showboat*, 47 F.2d 286 (D. Mass. 1930)). Nevertheless, while courts are now more reluctant to find that a ship has been withdrawn from navigation, the dead-ship doctrine remains viable. *See, e.g., Goodman*, 859 F.2d at 73; *Mercereau v. M/V Woodbine*, 551 F. Supp. 811, 815 (N.D. Ohio 1982); *Mammoet Shipping Co.*, 610 F. Supp. at 866-67; *American E. Dev. Corp.*, 608 F.2d at 125.

[3] *See* Footnote 2

the ship lay tied to the wharf and was "substantially deteriorating . . . [and accumulating] heavy rust all over the decks and decking machinery" and posed a "hazardous threat" to navigation. Order of March 22, 1993, at 2. This ship sat through two hurricane seasons without even the necessary maintenance to her hull, decking, or machinery. *Id.* at 4. Furthermore, as pointed out by defendants (in personam), plaintiff previously obtained a judicial sale of the ship by proving her abandonment, decay, and threat to shipping. To argue the contrary now is rather disingenuous. Having been abandoned and progressively deteriorating, the M/V Kwang Myong #71 is a "dead" ship, meeting the description of a vessel which has been withdrawn from navigation.

Plaintiff also argues clear error on the court's part "in failing to award judgment (in personam and in rem) to Plaintiff for the indebtedness arising after October 23, 1992 judgment in Civil Action No. 15-92."

With regard to moorage charges accruing after the date of judgment in Civil Action No. 15-92, the dead-ship doctrine is equally applicable in this instance to deny plaintiff's claim of maritime liens. With regard to plaintiff's *in personam* claim against the vessel's owner for wharfage accruing after October 23, 1992, to the date of the vessel's sale, February 22, 1993, this matter was not addressed as the parties were preoccupied in the argument with the "*in rem*" issue.[4] The ensuing order accordingly responded only to the *in rem* issue.

However, upon reconsideration of the record, and given the owner's default, we see no reason why plaintiff's *in personam* claim may not be addressed at this time. On the evidence, we fix moorage charges at the rate of $4,340 per month. Plaintiff Southwest Marine of Samoa, Inc. shall, therefore, have judgment in the sum of $17,360.00 against defendant Korea Wonyang Fisheries Co. Ltd. Plaintiff's claim for "contractual" interest is not supported on the evidence and is, therefore, disallowed.

Judgment will enter accordingly.

It is so ordered.

---

[4] Although the *res* only realized $1000 upon interlocutory sale, the "*in rem*" issue apparently had some significance to the parties' respective concern for collateral claims either pending or in the pipeline.